**HANNI M. FAKHOURY**
California Bar No. 252629
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Email: Hanni_Fakhoury@fd.org

Attorneys for Mr. Cayetano-Camacho

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>**GUADENCIO CAYETANO-CAMACHO**,<br><br>Defendant. | CASE NO.: 07CR3267-JLS<br><br>DATE: April 24, 2008<br>TIME: 10:00 a.m.<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS AND MOTIONS IN LIMINE |

**I.**

**STATEMENT OF FACTS**

Mr. Cayetano-Camacho is charged by indictment with being a deported alien found in the United States in violation of 8 U.S.C. §1326. This motion incorporates the facts included in Mr. Cayetano-Camacho previously filed motions.

**II.**

**THE GOVERNMENT MUST BE PRECLUDED FROM USING DEPORTATION DOCUMENTS AT TRIAL TO PROVE ALIENAGE**

**A. The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation, Not Alienage**

Mr. Cayetano-Camacho expects that the government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of his deportation. These two documents are admissible *only*

to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. As the Ninth Circuit has explained:

> **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing, and the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing. Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Cayetano-Camacho to be an alien after an administrative hearing, and that Mr. Cayetano-Camacho may have been removed from the United States after that deportation—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8) or Federal Rule of Evidence 401 to establish the fact of alienage.[1]

//

---

[1] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. Because the court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-file were admitted in Mr. Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because their probative value is substantially outweighed by their prejudicial effect. Both the order of deportation and warrant of deportation make reference to an "alien;" even more troubling, in the context of these documents, the term "alien" is associated *with* Mr. Cayetano-Camacho, who presumably is the "alien" to which the documents refer. In the face of these quasi-official government documents proclaiming Mr. Cayetano-Camacho to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as an open question that the government must prove beyond a reasonable doubt.

Therefore, should the Court nonetheless admit these documents, Mr. Cayetano-Camacho requests that this Court instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of deportation and the order of deportation to establish the fact of the deportation and for no other purpose, and that these documents do not, in and of themselves, establish the fact of alienage. Mr. Cayetano-Camacho further requests that this Court redact these documents to exclude any reference to his alleged alienage.

**B. None of the Other A-File Documents Are Admissible Under Any Rule of Evidence**

Mr. Cayetano-Camacho anticipates that the government may seek to admit other documents from the A-file, including the order to show cause why a person should not be deported and warnings regarding the possible penalties for reentry. None of these documents from the A-file are admissible to establish any matter at issue in this trial. All documents from the A-file—except the warrant of deportation and the order of deportation discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial than probative, cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible hearsay under Federal Rule of Evidence 803(8).

1. <u>The Notice to Appear Is Inadmissible.</u>

The Notice to Appear is inadmissible under Rules 401, 403, and 803(8) of the Federal Rules of Evidence. The Notice to Appear is a document that provides an alien with *notice* of the grounds for removal. It does not record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides an objective observation that a person committed a crime. This document is nothing

//

more than an *accusation* that the government must prove in an immigration proceeding. Therefore the Notice to Appear should be inadmissible at trial.

2. <u>The Warnings of Possible Penalties Is Inadmissible.</u>

Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The warning of possible penalties contains boilerplate statements (drafted by the former INS) regarding the penal consequences to an alien who illegally reenters the country. It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay, and is completely irrelevant. It is also more prejudicial than probative. Among other things, given the serious consequences listed on the warning of possible penalties, jurors may be led to speculate as to what this defendant did to be subject to such harsh penalties upon reentry. Clearly, such speculation is completely irrelevant to the charge at hand and could be severely prejudicial. Accordingly, the warnings of possible penalties also must be excluded at trial.

3. <u>If This Court Finds That These Documents Are Somehow Relevant, They Are Not Admissible to Establish Alienage; Thus, This Court Should Order The Documents Redacted And Provide The Jury With A Limiting Instruction</u>

To the extent that this Court finds any A-file document relevant to some point, the document is not admissible to establish Mr. Cayetano-Camacho's alienage. Accordingly, this Court should redact these documents to exclude (1) any mention that Mr. Cayetano-Camacho was previously convicted of any crime, including the listing of his address as any penal institution; <u>see</u> Fed. R. Evid. 403 and 404(b); (2) any reference to Mr. Cayetano-Camacho using an alias, or any mention that Mr. Cayetano-Camacho has used an alias; <u>see</u> Fed. R. Evid. 403 ; and (3) any reference to Mr. Cayetano-Camacho as an "alien," because that is an issue for the jury to decide. Additionally, the Court should instruct the jury as to the limited value of such documents pursuant to Federal Rule of Evidence 105.

**C. This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Cayetano-Camacho's Constitutional Rights**

Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage to protect Mr. Cayetano-Camacho's constitutional right to confront witnesses and to a jury trial based upon proof beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments. Because the right to confrontation is not applicable in immigration proceedings, the government may have met its burden of

proving alienage in an immigration proceeding based upon otherwise inadmissible hearsay. Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir. 1988). Similarly, because a criminal defendant such as Mr. Cayetano-Camacho never had the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him. See Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of testimonial statements of a witness who does not appear at trial and who the defendant did not have a prior opportunity to cross-examine violates the confrontation clause of the Sixth Amendment).

Additionally, in immigration proceedings, the government need only establish alienage by clear and convincing evidence. Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995). Once the government has established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal defendant to establish the fact of alienage has the effect of lowering the government's burden of proving alienage in the criminal trial.

Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Fed. R. of Evid. 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation"). The government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential element.

In sum, because the A-file documents are generated by the government without the constitutional safeguards surrounding criminal proceedings, it is unconstitutional to authorize their admission, as evidence

of alienage, in a criminal prosecution. This Court should exclude these documents in their entirety; or, to the extent the Court finds that these documents are admissible to prove some other fact, it should redact these documents to exclude reference to Mr. Cayetano-Camacho's alienage and instruct the jury as to the documents' limited relevance.

**III.**

**THE CERTIFICATE OF NONEXISTENCE OF RECORD IS INADMISSIBLE BECAUSE IT VIOLATES THE CONFRONTATION CLAUSE OF THE CONSTITUTION AND ALLOWS THE GOVERNMENT TO CIRCUMVENT ITS DISCOVERY OBLIGATIONS**

The government may seek to produce and introduce a Certificate of Nonexistence of Record (hereinafter "CNER") to establish that Mr. Cayetano-Camacho did not obtain permission for admission into the United States. This document is inadmissible both because it violates the Confrontation Clause of the Sixth Amendment. Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of testimonial statements of a witness who does not appear at trial and who the defendant did not have a prior opportunity to cross-examine violates the confrontation clause); but see United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005) (holding that CNER is non-testimonial).

Additionally, the failure to have this witness testify at trial and allow the admission of the CNER is an attempt by the Government to circumvent its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. U.S., 405 U.S. 150 (1972) and the Jenks Act, 18 U.S.C.§ 3500, *et seq*. If the declarant were to appear at trial to testify, Mr. Cayetano-Camacho would undoubtedly be entitled to discovery material, including impeachment evidence against that declarant and her own prior statements and certain other documents, in addition to being entitled to exercise the constitutional right of cross-examination. If the Court does allow the admission of the CNER, Mr. Cayetano-Camacho requests production of any and all discoverable material to which he would be entitled were this witness to testify at trial.

**IV.**

**THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 404(B) AND 609 BECAUSE THE GOVERNMENT HAS NOT PROVIDED ADEQUATE NOTICE OF OTHER CRIMES, WRONGS OR ACTS**

**A. Exclusion of Other Acts Evidence Under Rules 404(b) and 403.**

Federal Rule of Evidence 404(b) strictly forbids the use of evidence of prior crimes or bad acts merely to prove bad character. United States v. Garcia-Orozco, 997 F.2d 1302, 1303-04 (9th Cir. 1993).

The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and "may not be introduced unless the government establishes its relevance to an actual issue in the case." Id. at 1304 (citing United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985)). The purpose of Rule 404(b) is to "avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991). The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case. It "must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).

Because of the probative value of this evidence is typically outweighed by the danger of unfair prejudice, Fed. R. Evid. 403, the government is required to provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. Evid. 404(b). Timely notice of such evidence is not only a condition precedent to the admission of such evidence, but also critical so that Mr. Cayetano-Camacho may adequately prepare his defense. The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Cayetano-Camacho timely requested notice of proposed Rule 404(b) evidence in his motion to compel discovery, dated December 17, 2007. (Def.'s Mot. to Compel. Disco., Doc. #9 at 3). To date, the Government has not provided any notice of any proposed Rule 404(b) evidence it intends to introduce at trial. Because the government has failed to provide adequate notice of other crimes, wrongs, or acts allegedly committed by Mr. Cayetano-Camacho, let alone articulate the precise evidential hypothesis by which this evidence will be admitted, this Court should exclude any evidence the government seeks to introduce under Rule 404(b).

**B. Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to those offenses for which the court determines that the probative value outweighs its prejudicial effect to the accused. The government should be precluded from introducing any evidence of Mr. Cayetano-

Camacho's prior conviction, as it is irrelevant under Federal Rule of Evidence 401 and prejudicial under Federal Rule of Evidence 403. Even if Mr. Cayetano-Camacho were to testify at trial, the danger of unfair prejudice would substantially outweigh any possible relevance of his prior offense. See Fed. R. Evid. 401, 403, 609.

To the extent that this Court rules that Mr. Cayetano-Camacho's prior conviction is admissible under Rule 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Cayetano-Camacho was convicted. Such information would be more prejudicial than probative of Mr. Cayetano-Camacho's guilt of the charged offense. See Fed. R. Evid. 401, 403, 609.

## V.

## THIS COURT SHOULD PRECLUDE EXPERT TESTIMONY BECAUSE MR. CAYETANO-CAMACHO WAS NOT GIVEN NOTICE AS REQUIRED BY FEDERAL RULE OF CRIMINAL PROCEDURE 16(A)(1)(E)

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). See also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is *entitled* to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis added).

Mr. Cayetano-Camacho filed a Motion to Compel Discovery on December 17, 2007, which requested that the government disclose its expert witnesses per Rule 16. (Def.'s Mot. to Compel. Disco., Doc. # 9 at 4). Thus far, the government has not given any notice regarding expert testimony. This Court therefore should exclude any expert witness from testifying in order to give effect to the discovery requirements of Rule 16 and afford Mr. Cayetano-Camacho the opportunity to prepare his defense.

//

## VI.

## THE COURT SHOULD PRECLUDE ADMISSION OF DOCUMENTS NOT YET PRODUCED IN DISCOVERY AND SHOULD REQUIRE THE GOVERNMENT TO COMPLY WITH THE NOTICE REQUIREMENTS OF RULE 16 (d)(2)

Pursuant to Rule 16(d)(2), Mr. Cayetano-Camacho requests that the Court prohibit the introduction of any documents not yet produced in discovery. Additionally, pursuant to Federal Rule of Criminal Procedure 16 (d)(2), Mr. Cayetano-Camacho requests that the Court order the Government to provide him with prompt written notice of its intention to use any discoverable evidence in its case-in-chief.

## VII.

## THIS COURT SHOULD SUPPRESS AND EXCLUDE THE DEPORTATION HEARING AUDIOTAPE OR TRANSCRIPT

The Court must exclude any deportation hearing audiotape or transcript of any deportation proceedings because they would contain non-Mirandized statements made by Mr. Cayetano-Camacho in response to custodial interrogation. Questions asked in a custodial setting constitute interrogation if, under all the circumstances, the questions are "reasonably likely to elicit an incriminating response from the suspect." United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1982) (citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). In Mathis v. United States, 391 U.S. 1 (1968), the Supreme Court held that the defendant's statements to a revenue agent who was conducting a routine tax investigation were the product of custodial interrogation within the meaning of Miranda despite the fact that the agent's questioning was part of the routine tax investigation where no criminal proceedings could have even been brought and the defendant was in jail on an entirely separate offense. Id. at 4. The Court stated that "[t]hese differences are too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with reference to warnings to be given to a person held in custody." Id.

In the immigration context, the 9th Circuit has stated: "[i]f civil investigations by the INS were excluded from the Miranda rule, INS agents could evade that rule by labeling all investigations as civil. Civil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983). In Mata-Abundiz, an INS investigator interviewed the defendant at a local jail, where he was being held on state charges, as part of a routine civil investigation without a prior Miranda advisement. In a

subsequent federal prosecution for possession of a firearm by an alien, the district court permitted the government to introduce the defendant's statement to the INS investigator concerning his Mexican citizenship. This Court reversed the defendant's conviction recognizing that "the investigator cannot control the constitutional question by placing a 'civil' label on the investigation." Id. at 1280.

Moreover, the Ninth Circuit in Mata-Abundiz rejected the government's argument that the questioning fell within the exception to the Miranda requirements for routine background questioning attendant to arrest and booking. See United States v. Booth, 669 F.2d at 1237-38. In Booth, the 9th Circuit stated: "Ordinarily, the routine gathering of background, biographical data will not constitute interrogation. Yet we recognize the potential for abuse by law enforcement officers who might, under the guise of seeking 'objective' or 'neutral' information, deliberately elicit an incriminating statement from a suspect." Booth, 669 F.2d at 1238. The Court applied this objective test to Mata-Abundiz and found that the "background questions" related directly to an element of the offense to which the defendant was suspected and the questions were likely to elicit an incriminating response. Mata-Abundiz, 717 F.2d at 1280.

Like the questioning in Mathis and Mata-Abundiz, the questioning by the immigration judge in this case was "reasonably likely to elicit an incriminating response" within the meaning of Booth. All of Mr. Cayetano-Camacho's statements were made in response to direct questioning by government officials. The questioning concerned Mr. Cayetano-Camacho's place of birth, citizenship, and manner of entry into the United States. Federal law provides for criminal penalties to aliens who illegally enter the United States, see 8 U.S.C. §1325, and to aliens who illegally reenter the United States following deportation, see 8 U.S.C. § 1326. Therefore, Mr. Cayetano-Camacho's responses to these questions could have incriminated him and thus should not be admitted against him absent Miranda warnings.

In United States v. Solano-Godines, 120 F.3d 957, 961 (9th Cir. 1997), the government brought criminal charges against the defendant, Mr. Solano, for illegal reentry after a deportation. Id. at 959. Two years before, Mr. Solano appeared at a civil deportation hearing at which he made statements about his place of birth and citizenship. Id. Mr. Solano was not given Miranda warnings prior to making these statements. Id. Prior to trial, Mr. Solano filed a motion to suppress the statements at his deportation hearing. Id. at 960. The district court denied the motion and Mr. Solano entered a conditional plea agreement. Id. On appeal, the Ninth Circuit held that Miranda warnings were not required in that case because the immigration judge

"could not be expected to anticipate that two years later Solano would illegally reenter the United States and that his responses to questions at his civil deportation hearing might incriminate him in a prosecution for this future crime." Id. at 962.

The Ninth Circuit's holding and reasoning in Solano-Godines is inapplicable to this case. In particular, any statements made at any immigration hearings *after* he had already been previously deported or removed from the United States should be excluded because Mr. Cayetano-Camacho's responses to the immigration judge could have subjected him to criminal prosecution at that time, not some unknown time in the future. For that reason, the immigration judge should have advised him of his rights under Miranda. Because Mr. Cayetano-Camacho's admission were made without the benefit of Miranda warnings, and because he was affirmatively misled as to the consequence of making statements, his statements at the deportation hearing must be excluded. See United States v. Alderete-Deras, 743 F.2d 645, 648 (9th Cir. 1984) (noting that the lack of Miranda warnings at a civil deportation hearing might render statements made at the hearing inadmissible in a subsequent criminal trial).

## VIII.

## THIS COURT SHOULD PRECLUDE THE A-FILE CUSTODIAN FROM TESTIFYING ABOUT IMMIGRATION PROCEEDINGS

Under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to confront the witnesses against him. Evidence must be relevant and not create confusion for the jury or be unfairly prejudicial to the defendant. Fed. R. Evid. 401, 403. In addition, no lay witness is permitted to offer an opinion or testify about specialized knowledge. Fed. R. Evid. 702, *et seq.*; United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

In this case, Mr. Cayetano-Camacho expects that the Government will call the A-file custodian to establish the foundation for the admission of selected documents from Mr. Cayetano-Camacho's A-file. It is also expected that the Government will ask the A-file custodian how immigration proceedings work. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, and its admission would violate Mr. Cayetano-Camacho's rights to a fair trial and confrontation of witnesses under the Fifth and Sixth Amendments. It is unlikely that the A-file custodian has participated in deportation proceedings as

either an immigration judge or an immigration attorney and thus he would not be testifying from his own personal knowledge, but from the hearsay statements of other people, who were not presented for cross-examination by Mr. Cayetano-Camacho. This Court should therefore preclude the A-file custodian from testifying about how immigration proceedings work and about the significance of such documents. Rather, the A-file custodian's testimony should be limited to laying a foundation for the admission of any A-file documents this Court admits into evidence.

**IX.**

**THE COURT SHOULD EXCLUDE THE A-FILE CUSTODIAN**

Federal Rule of Evidence 615 directs the Court to exclude witnesses from the courtroom unless their presence is shown "to be essential to the presentation of the party's cause. . ." or the person is authorized by statute to be present. Fed. R. Evid. 615. The government has made no showing that the A-file custodian, or case agent, is such a person. Traditionally, witnesses such as the A-file custodian do not participate in the arrest or investigation of deported aliens other than to request and temporarily keep the accused's immigration A-file. The government will use this witness as nothing more than a custodian to lay a foundation for the admission of certain documents it considers relevant. The Court should treat this witness as any other witness in this case and exclude him or her from trial.

**X.**

**THIS COURT SHOULD PROHIBIT THE WITNESSES FROM REFERRING TO MR. CAYETANO-CAMACHO AS "THE ALIEN"**

To convict Mr. Cayetano-Camacho, the government must prove that he is an "alien." See 8 U.S.C. § 1326. "Alien" is a legal term that must be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); Fed. R. Evid. 704(a). It is also a finding that the jury must make; thus, no witness is permitted to opine that this element has been proved. See United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was "admitting the conspiracy" was improper because it required a legal conclusion).

The government likely will call several witnesses from the Department of Homeland Security (DHS), specifically, the A-file custodian, border patrol agents, and detention enforcement officers. Because the DHS has accused Mr. Cayetano-Camacho of being an alien, it is anticipated that these witnesses will refer

to Mr. Cayetano-Camacho as "the alien." If these witnesses testify that Mr. Cayetano-Camacho is an alien, it will create confusion among the jurors regarding this Court's instructions on the law and what the government has—or has not—proven, in violation of Federal Rule of Evidence 403. It will also subvert Mr. Cayetano-Camacho's right to a jury finding of every essential element—a right guaranteed by the Fifth and Sixth Amendments. Accordingly, this Court should preclude the witnesses from referring to Mr. Cayetano-Camacho as "the alien."

## XI.

## THE COURT SHOULD PRECLUDE SENDING THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS

In the commentary to Model Instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the Indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure nor case law require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Cayetano-Camacho urges this Court to follow the Committee's guidance. The language in the instant indictment "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes. Furthermore, the indictment recites that "the grand jury charges," and this could persuade those jurors without experience with the grand jury system that another jury had already found Mr. Cayetano-Camacho guilty. Mr. Cayetano-Camacho also requests that this Court caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

## XII.

## THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts if a witness who likely will testify at the trial of Mr. Cayetano-Camacho also is likely to have testified before the grand jury. Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove

any need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule of Criminal Procedure 26.2(d).

**XIII.**

**THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE**

Pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Cayetano-Camacho's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

**XIV.**

**MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

***Mr. Cayetano-Camacho has received 126 pages of discovery and one audio cassette of deportation proceedings.*** As information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, Mr. Cayetano-Camacho may find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

**XV.**

**CONCLUSION**

For the foregoing reasons, Mr. Cayetano-Camacho respectfully requests that the Court grant the above motions in limine.

Respectfully submitted,

Dated: April 10, 2008

*s/ Hanni M. Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Cayetano-Camacho