**HANNI M. FAKHOURY**
California Bar No. 252629
**CANDIS MITCHELL**
California Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Hanni_Fakhoury@fd.org

Attorneys for Mr. Cayetano-Camacho

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>**GUADENCIO CAYETANO-CAMACHO**,<br>Defendant. | CASE NO.: 07CR3267-JLS<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS DUE TO INVALID DEPORTATION |

**I.**

**STATEMENT OF FACTS**

**A. Immigration Proceedings**

The Immigration and Naturalization Service ("INS") Mr. Cayetano-Camacho was served with a Notice to Appear on June 14, 2007. The Notice to Appear advised Mr. Cayetano-Camacho that the INS alleged he was deportable under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. On July 9, 2007, Mr. Cayetano-Camacho appeared before Immigration Judge ("IJ") Robert O. Vicars, Jr. in Lancaster, California.

At the hearing, the IJ gave an advisal to the group of aliens, including Mr. Cayetano-Camacho, regarding their right to have an attorney present at no cost to the government. The IJ also informed the group about the right to appeal the IJ decision. After speaking to the group and to individual aliens, the IJ called Mr. Cayetano-Camacho's case and brought him into the immigration court alone. The IJ explained to Mr.

Cayetano-Camacho he was being brought alone because the IJ did not want to discuss his case on the record in front of the entire group. The IJ then went on to explain that Mr. Cayetano-Camacho was charged with being inadmissible because he was a Mexican citizen and he had come into the United States without inspection in 1989. The IJ also told Mr. Cayetano-Camacho that he had been convicted for committing lewd acts on a child for which he was sentenced to 365 days jail. The IJ then ordered Mr. Cayetano-Camacho deported to Mexico and explained to Mr. Cayetano-Camacho that his conviction entitled him to no relief. After telling the IJ that he understood, Mr. Cayetano-Camacho asked the IJ whether he could have a voluntary departure. The IJ informed Mr. Cayetano-Camacho that his conviction was an aggravated felony and therefore he was ineligible for cancellation of removal or voluntary departure and could therefore not return to the United States. The next day, July 13, 2007, Mr. Cayetano-Camacho was physically removed from the United States to Mexico through the San Ysidro Port of Entry, as evidenced by a warrant of removal.

**B. Instant Offense**

On November 18, 2007, Mr. Cayetano-Camacho was arrested near Marron Valley in Dulzura, California, and charged with being a deported alien found in the United States. On December 4, 2007, Mr. Cayetano-Camacho was indicted for violating 8 U.S.C. § 1326. The indictment alleged that Mr. Cayetano-Camacho was removed from the U.S. subsequent to March 28, 2007.

On December 17, 2007, Mr. Cayetano-Camacho filed a motion to compel discovery and dismiss the indictment for failure to allege the essential elements of 8 U.S.C. § 1326. On December 20, 2007, Mr. Cayetano-Camacho filed a motion to dismiss the indictment for grand jury violations. Mr. Cayetano-Camacho then filed a motion to dismiss the indictment due to an invalid deportation on February 1, 2008. At the time the motion to dismiss due to an invalid deportation was filed, Mr. Cayetano-Camacho had not yet received a copy of his immigration A-file, but explained in his motion that he would supplement the motion once he had received the A-file. Subsequently, at the motion hearing held on March 28, 2008**,** the court denied Mr. Cayetano-Camacho's motions without prejudice, to be supplemented by additional facts. Mr. Cayetano-Camacho now supplements and renews his motion to dismiss due to an improper deportation.

/ / /

/ / /

## II.

## THE INDICTMENT MUST BE DISMISSED BECAUSE IT RELIES ON AN INVALID DEPORTATION

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998). Because a removal order is an element of the crime of illegal reentry after deportation, Mr. Cayetano-Camacho has a Fifth Amendment right to collaterally attack his removal order. United States v. Mendoza-Lopez, 481 U.S. 828, 837-838 (1987). As the Supreme Court has said, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." Mendoza-Lopez, 481 U.S. at 837-838; see also United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (citing Zarate-Martinez, 133 F.3d at 1197 and Mendoza-Lopez, 481 U.S. at 837-838).

Under 8 U.S.C. § 1326(d), to successfully collaterally attack a deportation, a defendant must demonstrate: (1) exhaustion of all administrative remedies available to appeal the removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. See Ubaldo-Figueroa, 364 F.3d at 1048. "An underlying removal order is 'fundamentally unfair' if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (citing Zarate-Martinez, 113 F.3d at 1197) (internal brackets omitted). Because Mr. Cayetano-Camacho can meet all of these elements, the indictment must be dismissed.

### A. Mr. Cayetano-Camacho Is Excused From The Exhaustion Requirement Because His Waiver Of The Right To Appeal Did Not Comport With Due Process

The exhaustion and judicial review requirements of § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of the right to an administrative appeal did not comport with due process. Ubaldo-Figueroa, 364 F.3d at 1043 (citing United States v. Muro-Inclan, 249 F.3d 1180, 1189 (9th Cir. 2001), cert. denied, 534 U.S. 879 (2001)). A waiver does not comport with due process if it is not

considered and intelligent. Ubaldo-Figueroa, 364 F.3d at 1043 ; see also Mendoza-Lopez, 481 U.S. at 840 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding.").

An alien's waiver of his right to appeal his deportation order is not "considered and intelligent" if the IJ fails to advise the alien of the possibility of relief from deportation. Ubaldo-Figueroa, 364 F.3d at 1049 ("An alien can not make a valid waiver of his right to appeal a removal order if an IJ does not expressly and personally inform the alien that he has the right to appeal."). Moreover, it is the government's burden to establish by "clear and convincing evidence," Gete v. INS, 121 F.3d 1285, 1293 (9th Cir.1997), that the waiver is "considered and intelligent." United States Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993) (en banc); see also United States v. Gonzalez Mendoza, 985 F.2d 1014, 1017 (9th Cir. 1993) (finding a due process violation where IJ failed to inquire whether right to appeal was knowingly and voluntarily waived).

In answering these questions, the Court is *not* to put itself in the shoes of the immigration judge before whom Mr. Cayetano-Camacho appeared in 2007—the immigration judge who failed to advised Mr. Cayetano-Camacho as to *any* relief he was eligible for. A long line of cases from the Supreme Court on down make clear that this Court's determination is much different. The only question before the Court is whether *an* immigration judge reasonably could have granted Mr. Cayetano-Camacho relief in 2007. See, e.g., St. Cyr, 533 U.S. 289, Ubaldo-Figueroa, 364 F.3d 1042, Leon-Paz, 340 F.3d 1003. While there may be no case explicitly defining "plausible" in this context, Webster's Third New International Dictionary 1736 (1993), defines "plausible" as "superficially fair [or] reasonable . . ." and "superficially worthy of belief." This is, of course, a much lower and less discretionary standard than Mr. Cayetano-Camacho would have faced in immigration court. If Mr. Cayetano-Camacho has made a prima facie showing of prejudice, and the government has not proven that his claim would have been dismissed without some consideration, then this Court must grant Mr. Cayetano-Camacho's motion. See, e.g., United States v. Gonzalez-Valerio, 342 F.3d 1051,1054 (9th Cir. 2003) (discussing the government's burden).

Here, Mr. Cayetano-Camacho's waiver of the right to appeal at his 2007 deportation proceedings did not comport with due process because the IJ misinformed Mr. Cayetano-Camacho that he was ineligible for voluntary departure. Therefore the failure to exhaust administrative remedies is excused.

/ / /

**1. Mr. Cayetano-Camacho Was Misinformed At His 2007 Deportation Hearing That He Was Ineligible For Voluntary Departure.**

An alien's waiver of the right to appeal his deportation order is not "considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the [IJ] fails to 'advise the alien of this possibility and give him the opportunity to develop the issue." Ubaldo-Figueroa, 364 F.3d at 1049 (internal quotations omitted). Furthermore, the "requirement that the [IJ] inform an alien of his or her ability to apply for relief from removal is 'mandatory,' and '[f]ailure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceeding.'" Id. (quoting United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001). See also United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.2000) (finding due process violation because IJ failed to tell the defendant about his eligibility for waiver of deportation); United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998) (same).

When Mr. Cayetano-Camacho was deported in 2007, INA § 240B(a)(1) (8 U.S.C. § 1229c(a)(1)) stated:

> The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)] or section 237(a)(4)(B) [8 U.S.C. § 1227(a)(4)(B)] of this title.

INA § 240B(a)(1) (8 U.S.C. § 1229c(a)(1)). The sections of the INA referenced in the text of § 240B allows the government to deport an alien convicted of an aggravated felony or terrorism offense. So an alien removed on any ground other than being convicted of an aggravated felony or a terrorism offense is eligible for voluntary departure.

As evidenced by the June 14, 2007 Notice to Appear, and July 12, 2007 Warrant of Removal and Warning to Alien Removed, Mr. Cayetano-Camacho was charged with being removable because he was not properly admitted, under INA § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) and not because he was an aggravated felon. See Exhibit A (June 14, 2007 Notice to Appear), Exhibit B (July 12, 2007 Warrant of Removal) and Exhibit C (July 12, 2007 Warning to Alien Ordered Removed). Although he was eligible for voluntary departure, the IJ misinformed Mr. Cayetano-Camacho that he was ineligible. Therefore, his waiver of the right to appeal was not "considered and intelligent" and thus the need to exhaust his administrative

remedies is excused.

**a. Contrary to the Government's Argument, Mr. Cayetano-Camacho Was Not Ineligible For Voluntary Departure Because California Penal Code § 288 Is Not An Aggravated Felony.**

In its response to the first motion to dismiss due to an invalid deportation and at the motion hearing, the government argued that because Mr. Cayetano-Camacho was allegedly convicted of violating California Penal Code § 288, Lewd and Lascivious Acts With a Child Under 14, he was not eligible for voluntary departure because he was convicted of an aggravated felony. The government's argument is incorrect because California Penal Code § 288 does not constitute a categorical aggravated felony.

An aggravated felony is defined in 8 U.S.C.§ 1101(a)(43)(A) as including "sexual abuse of a minor." It is well settled that in defining "sexual abuse of a minor," courts are to use the categorical approach, as explained in Taylor v. United States, 495 U.S. 575 (1990). Under the categorical approach, courts first look to the specific statute to determine whether all the conduct covered by the statute meets the generic definition of the crime. If the statute is broader and covers more conduct than prohibited by the generic definition of the crime, than courts can employ the modified categorical approach and look to "a limited number of judicially noticeable documents to determine whether, although the statute of conviction is overinclusive, the defendant was in fact convicted of a crime that met the definition." Parrilla v. Gonzales, 414 F.3d 1038, 1042 (9th Cir. 2005).

In Parrilla the 9th Circuit explained that to categorically qualify as "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), "abuse requires more than improper motivation; it requires conduct that is abusive." Parrilla, 414 F.3d at 1041-1042. The 9th Circuit defines abuse as "misuse ... to use or treat so as to injure, hurt, or damage ... to commit indecent assault on." United States v. Pallares-Galan, 359 F.3d 1088, 1100 (9th Cir.2004) (quoting Webster's Third New Int'l Dictionary 8 (3d Ed.1981)) (internal quotation marks omitted). This definition encompasses both emotionally and physically harmful behavior. United States v. Lopez-Solis, 447 F.3d 1201, 1207 (9th Cir. 2006).

In Parilla, the 9th Circuit concluded that Washington Revised Code § 9.68A.090, communicating with a minor for immoral purposes, was not categorically "sexual abuse of a minor" because the statute covered conduct, that though not "commendable" such as taking a minor to an erotic performance, was not abusive. Id. at 1043. Similarly, in Pallares-Galan the 9th Circuit held that California Penal Code § 647.6(a),

which penalizes annoying/molesting a child under 18, did not categorically qualify as sexual abuse of a minor because it did not require conduct that was "abusive" although one of the elements of the offense was an "abnormal sexual interest in children." Pallares-Galan, 359 F.3d at 1102.

Similarly, Penal Code § 288, is broader than the definition of "sexual abuse of a minor." Slight touching done for the purpose of immediate sexual gratification is sufficient to violate Penal Code § 288. See People v. Austin, 111 Cal.App.3d 110 (Cal. App. 1980). In Austin, the defendant was convicted of violating Penal Code § 288 where the defendant touched a minor to lead them to a more secluded area. Id. at 112. The court concluded "Austin's contact would be sufficient provided it was done for the purpose of some immediate sexual gratification." Id. at 113. Therefore, the slight touching of a minor with an improper purpose is sufficient to be convicted under § 288. See e.g. People v. Lopez, 19 Cal.4th 282, 289 (1998) ("Any touching of a child under the age of 14 violates [§ 288] even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the victim.)" This slight touching of a minor, however, does not constitute "abuse" or "indecent assault." Therefore, Section 288 is overbroad and not categorically sexual abuse of a minor.

While the 9th Circuit ruled in United States v. Baron-Medina, 187 F.3d 1144 (9th Cir.1999) that Penal Code § 288 constituted "sexual abuse of a minor," that decision has been called into serious question by more recent 9th Circuit decisions. In Baron-Medina, the 9th Circuit ruled that Penal Code § 288 constituted a "crime of violence" under U.S. Sentencing Guideline § 2L1.2 (which in turn defines "crime of violence" as including "sexual abuse of a minor") because the conduct criminalized under Penal Code § 288 "falls within the common, everyday meanings of the words 'sexual' and 'minor.'" Baron-Medina, 187 F.3d at 1147. In short, the Baron-Medina court came to its conclusion based solely on the fact that "crime of violence" in U.S.S.G. § 2L1.2 includes "sexual abuse of a minor."

More recently, however, the 9th Circuit has cautioned that although a crime may constitute a per se crime of violence because it is enumerated in the commentary to U.S.S.G. § 2L1.2, that is not dispositive of whether the crime is categorically a "crime of violence." In United States v. Rodriguez-Guzman, 506 F.3d 738 (9th Cir. 2007), the 9th Circuit ruled that defendant's conviction for sexual abuse of a minor, in violation of California Penal Code § 261.5 constituted a "per se crime of violence" under U.S.S.G. § 2L1.2 since statutory rape was listed as a crime of violence in the commentary to the guideline section. Rodriguez-

Guzman, 506 F.3d at 743. As the 9th Circuit forcefully stated though, "[o]ur analysis does not, however, end there." Instead, the court proceeded to use the categorical approach of Taylor v. United States, 495 U.S. 575 (1990) to determine whether Penal Code § 261.5 was categorically "statutory rape," warranting a 16 level enhancement. The 9th Circuit concluded that Penal Code § 261.5 was overbroad and although was a per se crime of violence, was not a categorically a crime of violence.

Rodriguez-Guzman highlights Baron-Medina's flawed reasoning. In Baron-Medina, the 9th Circuit concluded that Penal Code § 288 constituted a per se crime of violence. However, that court failed to proceed to the next level of analysis required by Taylor and determine whether Penal Code § 288 is categorically a crime of violence. Accordingly, the IJ could not simply rely on the fact that California Penal Code § 288 criminalizes "lewd and lascivious acts with a child" which sounds like "sexual abuse of a minor" because the IJ needed to engage in the complete Taylor analysis and determine whether Penal Code § 288 categorically encompassed "abusive" conduct. In short, the question of whether Penal Code § 288 constitutes "sexual abuse of a minor" is far from a decided question, notwithstanding Baron-Medina.

Since Penal Code § 288 is categorically overbroad, the IJ was required to employ the modified categorical approach to determine whether Mr. Cayetano-Camacho admitted to facts that constituted "sexual abuse of a minor." But there was nothing presented at the deportation hearing and nothing is contained in Mr. Cayetano-Camacho's A-file to explain what Mr. Cayetano-Camacho was actually convicted of. Additionally, there were no judicially noticeable documents, such as a judgment and conviction or a transcript of a plea colloquy, in the A-file or presented at the deportation hearing from which the IJ could determine whether Mr. Cayetano-Camacho was convicted of "sexual abuse of a minor." Since Mr. Cayetano-Camacho was not convicted of an aggravated felony, he was eligible for voluntary departure. Since the IJ misinformed him that he was not eligible, his failure to exhaust administrative remedies is excused.

**b. Even If Mr. Cayetano-Camacho Was Convicted Of An Aggravated Felony, He Would Still Be Eligible For Voluntary Departure Because He Was Never "Admitted."**

Even if Mr. Cayetano-Camacho was convicted of an aggravated felony, he would still have been eligible for voluntary departure. It is undisputed that Mr. Cayetano-Camacho entered without inspection, and that he was never lawfully admitted to the United States or granted an adjustment of status to lawful

permanent resident. See Exhibits A, B and C. As an entrant who had never been inspected and authorized to enter the United States, Mr. Cayetano-Camacho did not fall under § 1229c(a)'s provision disqualifying "[a]ny alien who is convicted of an aggravated felony at any time after admission." See 8 U.S.C. § 1227(a)(2)(A)(iii). Mr. Cayetano-Camacho was therefore eligible for voluntary departure. As noted above, by failing to advise Mr. Cayetano-Camacho of his eligibility for voluntary departure, his waiver of appeal was not "considered and intelligent" and thus his failure to exhaust administrative remedies is excused.

This Court need look no further than the plain language of 8 U.S.C. § 1229c(a) to determine whether Congress intended an aggravated felon who was convicted after entering without inspection to remain eligible for pre-conclusion voluntary departure—it did. Thus, although there exists a regulation advancing a different standard, 8 C.F.R. § 1240.26, the regulation is invalid and the agency interpretation is entitled to no Chevron deference.

Complicating this relatively straightforward undertaking, however, is 8 U.S.C. § 1229c(e), which purports to convey to the Attorney General ("AG") unfettered authority to further restrict eligibility for voluntary departure. Admittedly, this legislative delegation, if valid, provides a separate and independent ground that lends 8 C.F.R. § 1240.26 legitimacy. It is not valid, however, because § 1229c(e) is an unconstitutional delegation of legislative power that violates separation of powers. Because the regulation is neither a permissible interpretation of the controlling statute nor an exercise of validly conveyed authority, the plain text of § 1229c(a) controls.

**i. The Plain Language of the Statute Controls**

This Court's interpretive task begins with the plain language of the statute. See Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1168 (9th Cir. 2006). No deference is due to "an agency's construction of the statute which it administers . . . [if] Congress has spoken directly to the precise question at issue [and] the intent of Congress is clear." Natural Resources Defense Council v. EPA, 915 F.2d 1314, 1320 (9th Cir. 1990) (quoting Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)). When "Congress has spoken directly, in unambiguous terms," the Court need look no further—"that is the end of the matter." Id. Legislative prerogative requires the judicial inquiry to end with clearly stated plain language because "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id.

When analyzing the text of § 1229c(a), this Court is "obliged to give effect, if possible, to every word Congress used." Clark, 460 F.3d at 1175. This Court has "consistently rejected interpretations that would render a statutory provision surplusage or a nullity." Id. (quoting In re Cervantes, 219 F.3d 955, 961 (9th Cir. 2000); alterations omitted). Reading the words "at any time after admission" out of the provision incorporated by § 1229c(a) would violate the rule that the statutory text be construed in "the broader part of the statute as a whole" in order to "avoid a construction which renders any language of the enactment superfluous." See id. at 1175, 1176 (citations omitted). "Only where a sensible result isn't reachable may [this Court] resort to the drastic step of ignoring statutory language." Id. (quoting Hearn v. W. Conference of Teamsters Pension Tr. Fund, 68 F.3d 301, 304 (9th Cir. 1995)(alterations omitted)).

The Ninth Circuit has embraced Mr. Cayetano-Camacho's reading. See Ortiz-Lopez, 385 F.3d at 1205 n.3 ("Relief from removal under § 1229c(a) is categorically barred to . . . those 'deportable under section 1227(a)(2)(A)(iii),' which in turn means those convicted of an aggravated felony at any time after admission."). Perhaps more compelling, the AG, in promulgating 8 C.F.R. § 1240.26, has also acknowledged that the § 1229c(a) plainly states what Mr. Cayetano-Camacho now argues. See Interim Rules Implementing IIRIRA, 62 Fed. Reg. 10312, 10326, Att'y Gen. Order No. 2017-97 (March 6, 1997) ("Sections 240B(a)(1) and 240B(b)(1)(C) of the statute bar aliens deportable under section 237(a)(2)(A)(iii) of the Act from voluntary departure. Because aliens entering without inspection are no longer considered deportable, however, the statutory bar might be read as allowing such aliens to obtain voluntary departure despite an aggravated felony conviction."). These comments make clear that the AG was aware of the conflict between the regulation he issued and the statutory text; the AG viewed the regulation as correcting a perceived "anomaly" created by the plain language, see id. ("The Department does not believe that Congress intended [the anomaly of more favorable treatment for aggravated felons who enter without inspection]."). The AG believed that issuing the regulation changed the state of the law. Id. ("the Department now exercises its discretion to bar such aliens from receiving this form of relief").

**ii. No Exception to the Plain Language Rule Applies**

The regulation cannot, however, trump the statutory text as a matter of interpretation unless "applying the plain language of the statute would lead to patently absurd results," United States v. Brown, 333 U.S. 18, 27 (1948), or "would render another section within the statute or within the act inoperative or

contradictory," Yates v. Hendon, 541 U.S. 1, 17-18 (2004). Because neither exception applies, the "strong presumption that Congress has expressed its intent in the language it chose" is dispositive. See INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987); cf. Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc., 448 F.3d 1092, 1096 (9th Cir. 2006) (Bybee, J., dissenting from denial of rehearing en banc) ("I know of no 'illogicality' doctrine that permits us [or the AG] to change the words in a statute when we think there is a more logical way that Congress could have written it.").

Section 1229c(a)'s explicit limiting language, which makes pre-conclusion voluntary departure relief unavailable for someone who entered lawfully and then committed an aggravated felony but permits an unlawful entrant convicted of such a crime to apply for such relief makes sense. Different treatment of lawful and unlawful entrants reflects several perfectly rational policy choices: (1) lawful entrants who committed a serious crime after they were granted the privileges and benefits of lawful admission have engaged in an abuse of trust that unlawfully present felons have not;[1] (2) such persons "pose[] a potentially higher risk of recidivism," Taniguchi v. Schultz, 303 F.3d 950, 958 (9th Cir. 2002), and should not get the "second chance" to lawfully reenter that voluntary departure could offer, see Lara-Ruiz v. INS, 241 F.3d 934, 948 (7th Cir. 2001); (3) for unlawfully present criminal aliens, it is a higher priority to ensure their physical departure from the U.S. as expeditiously as possible, with minimal resistance and minimal expenditure of the administrative resources necessary to complete a full-fledged removal hearing; (4) the "benefit" of voluntary departure is virtually illusory for unlawful entrants because they are less likely to have the familial ties to seek lawful reentry, and therefore this form of relief achieves the same result as formal removal while saving the expense of subsidizing the alien's return travel;[2] and (5) Congress need only

---

1. The "abuse of trust" rationale has been embraced by at least seven circuits to explain analogous ineligibility of criminal legal permanent residents (LPRs) versus criminal non-LPRs, who are eligible for INA § 212(h) relief. See Cordes v. Gonzales, 421 F.3d 889, 897 (9th Cir. 2005); Latu v. Ashcroft, 375 F.3d 1012, 1020-21 (10th Cir. 2004); De Leon Reynoso v. Ashcroft, 293 F.3d 633, 640 (3d Cir. 2002); Jankowski-Burczyk v. INS, 291 F.3d 172, 176 (2d Cir. 2002); (Lukowski v. INS, 279 F.3d 644, 647-48 (8th Cir. 2002); Moore v. Ashcroft, 251 F.3d 919, 925-26 (11th Cir. 2001); Lara-Ruiz v. INS, 241 F.3d 934, 947-48 (7th Cir. 2001).

2. Cf. De Leon Reynoso, 293 F.3d at 640 (eligibility for lawful return of unlawful entrants, because they likely lack "the ties to obtain a relative to petition the Attorney General for adjustment of status," is "more theoretical than real . . . and could have led Congress to omit non-LPRs in [§ 1229c's disqualification provision]").

address a given problem "one step at a time."[3] Thus, Congress's chosen language is clear.

Neither is the plain language of § 1229c(a) a "typographical error," which might justify a regulatory correction of Congress's inadvertent mistake. To the contrary, the plain meaning, advocated by Mr. Cayetano-Camacho, is "fully grammatical and can be understood by people of ordinary intelligence." Amalgamated Transit Union, 448 F.3d at 1098 (dissent). Had it so desired, Congress could quite easily have substituted the language it used, "is not deportable under section 1227(a)(2)(A)(iii)," with the regulatory language, "has not been convicted of a crime described in section 101(a)(43) of the Act" or with even simpler language, such as "has not been convicted of an aggravated felony." It did not.[4] The plain language controls.

**iii. Section 1229c(e) Does Not Authorize the Narrowing Regulation**

The only remaining source of authority for 8 C.F.R.§ 1240.26 is 8 U.S.C. § 1229c(e), which provides: "The Attorney General may by regulation limit eligibility for voluntary departure under this section for any class or classes of aliens." 8 U.S.C. § 1229c(e) ("Additional conditions"). To the extent that this grant of authority supports the AG's promulgation of § 1240.26(b)(1)(i)(E) (enlarging § 1229c(a)'s class of ineligible aliens to include all individuals convicted at any time of an aggravated felony), it transgresses the constitutional principles of separation of powers and limit on legislative delegation.

Section 1229c(e) purports to convey to the AG the quintessentially legislative power to repeal duly-enacted legislation, in violation of the Constitution's dedication of such authority to Congress. See U.S. Const. Art. I , § 7 (laws may be made only upon bicameral passage and presentment to the President); Clinton v. New York, 524 U.S. 417, 438 (1998) (absence of a Constitutional provision "that authorizes the President [or the Attorney General] to enact, to amend, or to repeal statutes" is "equivalent to an express prohibition"). Section 1229c(e)'s delegation of power suffers from the same problems as the Line Item Veto

---

3. Jankowski, 291 F.3d at 179. Moreover, "Congress may well have considered that it had already suitably solved the problem presented by [unlawful entrant] aggravated felons" through § 1228's expedited removal provisions, which foreclose all relief so long as the AG elects to use this mechanism. Jankowski, 291 F.3d at 179.

4. Congress's word choice was not due to confusion about the difference between deportability and inadmissibility, as the AG suggests, 62 Fed. Reg. at 10326. Congress was well aware of this difference, evident from its ability to distinguish between these concepts in the very same section of IIRIRA. See, e.g., Pub. L. 104-208, § 304 (defining removable as inadmissible under § 212 or deportable under § 237).

Act (LIVA), struck down by the Supreme Court in Clinton. The President's power to unilaterally veto provisions of duly-passed budgetary legislation under LIVA amounted to the power of unilateral repeal—a power the President may not constitutionally posses. Id. at 445-46 ("The fact that Congress intended such a result if of no moment."). Like LIVA, § 1229c(e) unconstitutionally authorizes an executive branch officer, the AG, to repeal or partially repeal § 1229c(a)'s provision creating the possibility of pre-conclusion voluntary departure. Under its terms, the AG could "limit eligibility for voluntary departure" by making it entirely unavailable—effectively repealing that part of the statute. See id. at 441 ("cancellation of one section of a statute may be the functional equivalent of a partial repeal even if a portion of the section is not canceled"). It makes no difference that Section 1240.26 exercises § 1229c(e)'s power to effect a partial (and not a full) repeal of § 1229c(a)—by eliminating voluntary departure for the group of otherwise eligible unlawful entrants to which Mr. Cayetano-Camacho belongs, but not for everyone. See Whitman v. American Trucking Ass'ns, Inc., 531 U.S. 457, 473 (2001) (an agency cannot "cure an unconstitutionally standardless delegation of power by declining to exercise some of that power"). Neither does the AG's discretion to deny voluntary departure on an individual basis ameliorate the problem because the regulation results in a crucial functional difference: it abrogates the right to individual consideration for relief. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 266-68 (1954) (the BIA's "*failure to exercise* its own discretion, contrary to existing valid regulations," due to the AG's blacklisting of petitioner, violated petitioner's due process right to the "opportunity to try . . . to convince the Board" to exercise discretion in his favor) (emphasis added); accord Clinton, 524 U.S. at 446-47, 466-67 (Scalia, J., dissenting) (advancing such an argument, rejected by the Court).

Section 1229c(e)'s standardless grant of authority to restrict voluntary departure eligibility also runs afoul of the nondelegation principle because it fails to "lay down . . . an intelligible principle to which the person or body authorized to act is directed to conform." Whitman, 531 U.S. at 472 (quoting J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928)). Indeed, the statute provides "literally no guidance of the exercise of discretion." Id. at 474. Under its terms, the AG may "limit eligibility . . . for *any* class or classes of aliens." 8 U.S.C. § 1229c(e) (emphasis added). This unfettered grant of authority stands in stark

contrast to legitimate delegations, where Congress has typically identified a specific purpose,[5] "declared a general rule and imposed the duty of ascertaining what particular cases came within the rule," see Panama Refining Co. v. Ryan, 293 U.S. 388, 426 (1935), or charged the agency with a micro-level administrative task, see Whitman, 531 U.S. at 475 (agency to define which types of grain elevators are "country elevators"). Because "Congress has set up [no] standard for the [AG's] action," has not "required any finding by the [AG] in the exercise of the authority" under the provision, and has made no clear declaration of policy, § 1229c(e)'s broad grant of authority is at the least constitutionally infirm, if not entirely unconstitutional. See Panama Refining Co., 293 U.S. at 415.

Particularly telling is the fact that the AG has employed § 1229c(e)'s power to contravene the express language used by Congress, see 62 Fed. Reg. at 10326, a decision made on the same policy level as the legislative act—which smacks of an "undemocratic" legislative attempt to "escap[e] the sort of accountability that is crucial to the intelligible functioning of a democratic republic."[6] John Hart Ely, Democracy and Distrust 132 (1980) (legislators may delegate power to avoid "politically controversial decisions—to leave them instead to others, most often others who are not elected or effectively controlled by those who are"); see also Cass R. Sunstein, Nondelegation Canons, 77 U. Chi. L.Rev. 315, 317-18 (2000) ("certain highly sensitive decisions should be made by Congress, and not by the executive pursuant to open-ended legislative instructions").

In light of its likely, if not actual, unconstitutionality, constitutional avoidance at the very least

---

[5] See United States v. One Sentinel Arms Striker-12 Shotgun Serial No. 001725, 416 F.3d 977, 979-80 (9th Cir. 2005) (agency to define what sort of shotgun "is generally recognized as particularly suitable for sporting purposes"); see also South Dakota v. United States Department of the Interior, 423 F.3d 790, 798-99 (8th Cir. 2006) (statute authorizing the Secretary of the Interior to acquire property "for the purpose of providing land for Indians").

[6] This risk appears doubly likely in light of § 1229c(e)'s jurisdiction-stripping provision: "No court may review any regulation issued under this subsection." This sentence does not bear upon the appeal at hand, where appellate jurisdiction is undisputed in this direct federal criminal appeal. Moreover, 8 U.S.C. § 1252(a)(2)(D), permitting judicial review of "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals," appears to permit direct review of the argument raised by Mr. Cayetano-Camacho, notwithstanding "any other provision of this chapter . . . which limits or eliminates judicial review." Finally, precluding consideration of the regulation here would raise serious constitutional problems. Accord United States v. Klein, 80 U.S. (13 Wall.) 128, 146 (1871) (Congress lacks authority to enact statutes purporting to deny jurisdiction, but which effectively "prescribe a rule for the decision of a cause in a particular way").

requires the scope of § 1229c(e) to be limited to authorize only legitimate administrative purposes. One possible construction would limit "any class or classes of aliens" to classes defined by some nexus to reducing the administrative burden, which is in line with § 1229c(a)'s goal of permitting physical removal without the expending the time and resources necessary to conduct a full hearing. Other provisions of 8 C.F.R. § 1240.26 advance such a goal: subsection (A) requires a request to happen at the earliest merits hearing; (B) permits relief only once; (C) requires the alien not to contest removability; and (D) ensures that no appeal will be taken. Subsection (E), by contrast, would be unauthorized by such a construction because it lacks such a nexus and would actually *increase* the administrative burden by requiring an IJ to conduct a full hearing for individuals like Mr. Cayetano-Camacho and bear the additional burden of potential appeal.

**B. The 2007 Removal Proceeding Improperly Deprived Mr. Cayetano-Camacho Of The Opportunity For Judicial Review**

As explained in detail above, Mr. Cayetano-Camacho did not make a "considered and intelligent" waiver of his appellate rights because he was not informed of his potential eligibility for relief from deportation. The 9th Circuit has held that the failure to inform an alien of their appeal rights satisfies the judicial review prong of § 1326(d)(2). Ubaldo-Figueroa, 364 F.3d at 1050 (citing Zarate-Martinez, 133 F.3d at 1197); see also Mendoza-Lopez, 481 U.S. at 840 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding."). Therefore the invalid appellate waiver - as well as the failure to advise Mr. Cayetano-Camacho of his eligibility for relief - not only excuses the exhaustion requirement, but also demonstrates that the proceedings deprived him of meaningful judicial review.

**C. The Removal Order Was Fundamentally Unfair Because It Violated Mr. Cayetano-Camacho's Right To Due Process And Prejudiced Him**

As noted above, "[a]n underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (quoting Zarate-Martinez, 133 F.3d at 1197).

/ / /

/ / /

**1. Mr. Cayetano-Camacho's Due Process Rights Were Violated At His Deportation Proceeding**

Again, as described in detail above, at Mr. Cayetano-Camacho's deportation proceeding his appellate waiver was not "considered and intelligent" and therefore violated his right to due process because he was misinformed that he was ineligible for relief from deportation. See Ubaldo-Figueroa, 364 F.3d at 1043; see also Mendoza-Lopez, 481 U.S. at 840 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding.").

**2. Mr. Cayetano-Camacho Was Prejudiced Because He Could Have Applied For Relief Had He Known He Was Eligible**

To establish prejudice, Mr. Cayetano-Camacho does not have to show that he would have been granted relief. Instead, he need only show that he had a "'plausible' ground for relief from deportation." Ubaldo-Figueroa, 364 F.3d at 1050 (citing Arrieta, 224 F.3d at 1079). As the Ninth Circuit has explained, prejudice means that "the outcome of the proceedings *may have been affected* by the alleged violation." Zolotukhin v. Gonzales, 417 F.3d 1073, 1076 (9th Cir. 2005) (emphasis in original). "The standard does not demand absolute certainty; rather prejudice is shown if the violation '*potentially* . . . affects the outcome of the proceedings.'" Id. at 1077 (citing Agyeman v. INS, 296 F.3d 871, 884 (9th Cir. 2002)) (emphasis in original). For example, in Zolutukhin the government argued that the petitioner lacked good character and thus would not have been able to prevail on his claims. Zolutukhin, 417 F.3d at 1077. The Ninth Circuit rejected this argument, noting that "even a petitioner with purportedly bad character and possibly a weak case has a right to a fair hearing." Id. Because the outcome of the case may have been different absent the due process violations, the case was remanded for a new hearing. Id.

Mr. Cayetano-Camacho was clearly eligible for voluntary departure. Mr. Cayetano-Camacho himself specifically asked the IJ whether he could be given a voluntary departure. This suggests that Mr. Cayetano-Camacho met the other requirements for voluntary departure - the will and ability to depart the United States and the ability to pay his own passage. The IJ's misadvisal therefore did more than to "*potentially*...affect the outcome of the proceedings" but actually *did* affect the outcome. Zolutukhin, 417 F.3d at 1077 (emphasis in original). Because the IJ misadvised him that he was ineligible for voluntary departure, the defects in the deportation proceedings prejudiced Mr. Cayetano-Camacho.

Because Mr. Cayetano-Camacho is exempt from the exhaustion requirement, because the underlying removal proceedings at which his deportation order was issued improperly deprived him of the opportunity for judicial review and because the entry of the orders were fundamentally unfair since he was deprived of due process and prejudiced as a result, the indictment must be dismissed.

**III.**

**CONCLUSION**

For the foregoing reasons, Mr. Cayetano-Camacho respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: April 23, 2008

*s/ Hanni M. Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Cayetano-Camacho