**HANNI M. FAKHOURY**
California Bar No. 252629
**CANDIS L. MITCHELL**
California Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Email: Hanni_Fakhoury@fd.org

Attorneys for Mr. Cayetano-Camacho

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>**GUADENCIO CAYETANO-CAMACHO**,<br>Defendant. | CASE NO.: 07CR3267-JLS<br><br>DATE: May 19, 2008<br>TIME: 9:00 a.m.<br><br>DEFENDANT'S REPLY TO GOVERNMENT'S SUPPLEMENTAL RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE TO EXCLUDE "A-FILE" DOCUMENTS |

**I.**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Contrary to the government's supplemental response, not a single one of the cases it cites supports admission of the 1989 I-213 and I-263B forms into evidence. Rule 803(8) of the Federal Rules of Evidence, commonly known as the public records exception to the hearsay rule, states

> Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, **excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel,** or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

As the Ninth Circuit has explained, "when public records are used against a defendant in a criminal prosecution, the public records exception is the exclusive applicable hearsay exception." United States v. Orellano-Blanco, 294 F.3d 1143, 1149 (9th Cir. 2002). Orellano-Blanco explains that "in criminal cases, the public records hearsay for which an exception to inadmissibility is made is limited to records of routine, nonadversarial matters made in a nonadversarial setting, reflecting ministerial, objective observations." Id. at 1150 (quotations and citations omitted).

The I-213 and I-263B in this case do not fall within the exception of inadmissibility as "ministerial, objective observations." Of all the cases cited by the government, United States v. Orellano-Blanco, 294 F.3d 1143 (9th Cir. 2002) is most directly on point to the issue presented here. At defendant's criminal trial, the government introduced a "record of sworn statement" signed by the defendant and containing statements made by the defendant during an interview with the INS. The defendant was interviewed by INS as part of his application process to become a permanent resident alien. At the interview, the defendant made statements about his marriage. Later, the defendant was indicted for marriage fraud and the report was admitted into evidence to show that he lied during the interview and thus committed fraud.

The Ninth Circuit ruled that admission of the interview was error and reversed the conviction. It noted that the only way for the report to come in would have to be under the public records exception. It concluded, however, that the report was inadmissible under Rule 803(8). The INS officers and agents were "law enforcement" personnel. The court then explained that "though the interview might not have been used for law enforcement purposes had the INS officer been satisfied, it was in fact used for that purpose. . ." Orellano-Blanco, 294 F.3d at 1150. Since the government alleged the fraud occurred when defendant lied to the INS about his marriage, the interview was made at the scene of the crime. Thus the agents' notes of the interview was a subjective recording of the observations at the scene of the crime as it took place. Since this was the precise type of evidence that Rule 803(8) expressly prohibits, its admission was a violation of the hearsay rule.

The reports in this case fall squarely within the reasoning of Orellano-Blanco. Both the I-213 and I-263B were written by law enforcement personnel and though "might not have been used for law enforcement purposes had the [Border Patrol] officer been satisfied, it was in fact used for that purpose..." Orellano-Blanco, 294 F.3d at 1150. Furthermore this report was written at a scene of a crime - an

investigation into alleged alien smuggling an individual named Spyridon Papantonopoulos. The I-213 here details the encounter between Mr. Cayetano-Camacho and Border Patrol agents after Mr. Cayetano-Camacho was apprehended in a motel in Shelby, Montana in 1989. The officers ask information of Mr. Cayetano-Camacho about this individual and record their subjective observations of Mr. Cayetano-Camacho's responses in the I-263B. Since these documents fall squarely within the holding of Orellano-Blanco, the documents are inadmissible under Rule 803(8).

While it is true that the reports were not written at the scene of the crime which Mr. Cayetano-Camacho is currently charged with, the report was still written at the scene of a crime in which Mr. Cayetano-Camacho was present and contains the subjective observations of law enforcement personnel investigating this crime. Though perhaps the report was never used in a criminal prosecution in 1989, the fact that is being used now in a different criminal proceeding in 2007, as the government candidly asserts "does not alter the original context and intent under which the records were made." Gov. Supplemental Response at 4, lines 21-22.The report was a police report in 1989 and its status as one has not changed since then. Therefore it must be excluded under Rule 803(8).

Furthermore, none of the other cases cited by the government support its position. The government cites United States v. Contreras, 63 F.3d 852 (9th Cir. 1995) and United States v. Hernandez-Rojas, 617 F.2d 533 (9th Cir. 1980), which both hold that a warrant of removal or deportation - commonly known as a form I-205 - is admissible under the public record s exception. Yet as Contreras explains, its conclusion was based on the fact that a "form indicating that an alien has left the country is a routine, objective, indeed mechanical recording of an unambiguous factual matter." Contreras, 63 F.3d at 857. There is a world of difference, however, between a I-205 and the documents at issue here: an I-213 and I-263B. A I-205 is a document that details when and where an alien is physically removed from the United States. The only facts contained on an I-205 is the grounds for the alien's removal and the signature of the deportation officer witnessing the physical removal as well as his markings indicating which port of entry the alien was removed. As the Ninth Circuit has noted this is a "routine, objective, indeed mechanical recording" of a fact. Id. Hernandez-Rojas also explains that an I-205 is not made at the scene of the crime and is not created in an adversarial setting. Hernandez-Rojas, 617 F.2d at 535 (I-205 "has none of the features of the subjective report made by a law enforcement official in an on-the-scene investigation").

Conversely, an I-213 contains subjective information, including the observations and evaluations of law enforcement officers detailing their encounter with an alien in the field. As the government itself conceded at the motion in limine hearing, an I-213 is a police report written by law enforcement personnel. In most criminal cases for violations of 8 U.S.C. § 1326 it is the only law enforcement report generated, serving as the arrest report. The I-213 details the on-the-scene encounter between law enforcement and an apprehended alien. The I-213 here details the encounter between Mr. Cayetano-Camacho and Border Patrol agents after Mr. Cayetano-Camacho was apprehended in a motel in Shelby, Montana in 1989. The narrative portion of the report begins with the heading "Intelligence," proof this is a report generated to document an ongoing alien smuggling investigation of Spyridon Papantonopoulos. Nothing in this report indicates it is an "objective, routine" or "mechanical" recording of a fact the way an I-205 is. The same is true of the I-263B which is not an "objective" or "routine" recording of a fact. The document contains the officers recounting of an alien's statements in the officers own words. Before detailing the alleged statements of the alien, it begins with Miranda warnings, proof that the report could be used in criminal litigation and that an adversarial relationship between the alien and law enforcement exists. These documents were created for investigation and prosecution, not just simply to document an aliens physical removal from the United States, like an I-205. While an I-205 contains the alien's signature, it contains no Miranda warnings or narrative section like an I-263B. Thus the government's attempt to equate an I-205 and the documents at issue here completely fail.

Citing United States v. Hernandez-Herrera, 273 F.3d 1213 (9th Cir. 2001), the government asserts that deportation documents are admissible to prove alienage. Though Hernandez-Herrera did rule that deportation documents are admissible to prove alienage, that case never explained which deportation documents were admitted into evidence at trial and what specific documents the defendant objected to. Thus that case sheds no light on whether the specific documents at issue here - the I-213 and I-263B - are admissible. As the government itself notes, Espinoza v. INS, 45 F.3d 308 (9th Cir. 1113) is neither binding or persuasive since that case dealt with an immigration proceeding. Rule 803(8) controls the situation here and that rule specifically exempts police records in criminal cases. Since Espinoza is in the government's own words neither "binding or persuasive here in this criminal case" it is completely irrelevant.

Two other arguments raised by the government merit attention. The government first asserts that the I-213 is a "deportation document." However, there is not a single piece of evidence detailing what, if anything happened, following this 1989 encounter in Montana. There is no evidence in the A-file detailing if Mr. Cayetano-Camacho was deported in 1989 or given a voluntary departure or allowed to remain in the United States. Additionally, there is no evidence in the A-file or provided in discovery that explains whether the Border Patrol investigated Spyridon Papantonopoulos and whether Mr. Cayetano-Camacho was held as a material witness in that criminal case. Calling these documents "deportation documents" assumes a fact for which there is no evidence to support.

Second, though the government asserts these documents are "inherently reliable" it appears that the I-213 is incomplete or missing a page. The narrative section ends in an incomplete sentence and says "(Over)" suggesting the narrative is continued on the next page. Unsurprisingly, the A-file does not contain a second page or continuation of the I-213. Thus the I-213 is incomplete. Additionally, the government's assertion that the forms are reliable because they contain Miranda warnings in both Spanish and English is unsupported by anything in the A-file or discovery because nothing is known about this encounter, the Spanish proficiency of the Border Patrol agent who interrogated Mr. Cayetano-Camacho, the surrounding or setting of the interrogation, how much time elapsed between arrest and interrogation and whether the statements were voluntarily made or not. Since the government bears the burden of proving the voluntariness of any statement it intends to use at trial, 18 U.S.C. § 3501, and also bears the burden of proving that a waiver of Miranda rights is knowing and voluntary, the reliability of these documents should not be presumed. See Miranda v. Arizona, 384 U.S. 436, 475 (1966) ("a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."). Thus if the government does intend to use these documents and the statements contained in them, a voluntariness hearing outside of the presence of the jury is required as a prerequisite to the introduction of these documents.

Finally, these documents are irrelevant under Rules 401 and 402 of the Federal Rule of Evidence since Mr. Cayetano-Camacho's status in 1989 does nothing to shed light on whether he committed the crime of being a deported alien found in the United States almost twenty years later in 2007. Additionally, admission of this document should be excluded under Federal Rule of Evidence 403 for a number of

reasons. First, the document is misleading to the jury because the government likely intends to use these documents as"deportation documents" that show Mr. Cayetano-Camacho had been deported before 2007. Yet as explained above, there is nothing in the A-file that explains what happened after this encounter or if Mr. Cayetano-Camacho was actually deported in 1989 or given a voluntary departure or even returned to Mexico. The probative value of these documents is also outweighed by the fact that these documents are cumulative when the government intends to introduce both a transcript of Mr. Cayetano-Camacho's deportation proceeding and play the audiotape of proceeding, as well as introduce his field statements. Thus these documents should be excluded.

**II.**

**CONCLUSION**

For the foregoing reasons, Mr. Cayetano-Camacho respectfully requests that the Court preclude the admission of the I-213 and I-863B forms at trial.

Respectfully submitted,

Dated: May 17, 2008

*s/ Hanni M. Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Cayetano-Camacho